Walter D. Abbott v. Commissioner. Grace D. Hubbard v. Commissioner.
Abbott v. Comm'r
Docket Nos. 15576, 19534. United States Tax Court
1949 Tax Ct. Memo LEXIS 122; 8 T.C.M. (CCH) 674; T.C.M. (RIA) 49183; July 29, 1949
*122 On the facts, held: 1. Petitioner Walter D. Abbott is liable as transferee of Abbott Associates, Inc. for the entire deficiency determined against that corporation. 2. Petitioner Grace D. Hubbard received no assets of Abbott Associates, Inc. and is not liable as a transferee for any part of the deficiency determined against that corporation. Roger W. Hardy, Esq., 53 State St., Boston, Mass., for the petitioner in Docket No. 15576. Wallace W. Brown, Esq., 49 Pearl St., Hartford 3, Conn., for the petitioner in Docket No. 19534. Paul P. Lipton, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve the liability of petitioners as transferees of the assets of Abbott Associates, Inc. The tax liability involved is a deficiency in excess-profits tax for the taxable year March 15, 1942 to September 30, 1942 in the amount of $8,662.75. Neither the amount nor the correctness of the deficiency is in dispute. The issues presented are: (1) Whether petitioner Walter D. Abbott is liable, at law or in equity, as transferee or fiduciary for the deficiency determined against Abbott Associates, Inc. *123 (2) Whether petitioner Grace D. Hubbard is liable, in equity, as transferee of assets of Abbott Associates, Inc., for the deficiency determined against that corporation. The case was submitted on oral testimony and documentary evidence. Findings of Fact Petitioner Walter D. Abbott (hereinafter referred to as Abbott) was an employee of Pratt & Whitney Aircraft in Hartford, Connecticut. Sometime in 1941, in collaboration with Vincent Thornburg, he invented a magneto synchronizer for aircraft Prior to March 1942 he had produced in the cellar of his home about 200 synchronizers which he marketed. Abbott became acquainted with E. K. Hubbard, also an employee of Pratt & Whitney Aircraft. Hubbard suggester to Abbott means of introducing his invention into the armed services. Early in 1942, Hubbard and Abbott went to Wright Field, Dayton, Ohio, where Hubbard introduced Abbott to Army procurement officers. At a conference, Army officials indicated a willingness to place a contract for 10,000 synchronizers, provided satisfactory arrangements would be completed to assure performance and responsibility. Upon his return to Hartford, Connecticut, Hubbard interested his mother in investing *124 in such enterprise. He then obtained his employer's permission to take part in the organization of the venture. Abbott Associates, Inc. was organized under the laws of the State of Connecticut to manufacture and market the magneto synchronizer under a contract being negotiated by Abbott with the War Department. The certificate of incorporation was filed March 16, 1942. The authorized capital stock of the corporation was $50,000, consisting of 200 shares of $100 par value Class A stock and 300 shares of $100 par value Class B stock. The Class A stock was entitled to preference on liquidation or dissolution, and could be redeemed by the corporation at par at any time after March 15, 1943. The duration of the corporation was limited to two years. All of the authorized Class A stock, except one share which was in the name of Barbara Hubbard, was issued to Grace Hubbard in consideration for $30,000 cash. Two hundred shares of Class B stock were issued to Abbott (one share was in the name of his brother, Capen Abbott) in consideration for his transfer of all his right, title and interest in the magneto synchronizer, including the right to apply for a patent, and his assignment to the *125 corporation of all his interest in a contract in the process of preparation with the Army Air Corps, including all moneys due or to become due by virtue of the contract. Abbott certified that the property and contract rights assigned by him to the corporation had a value of $20,000. The directors of the corporation consisted of Abbott, Grace Hubbard, Capen Abbott, and Barbara Hubbard. The first three mentioned directors were elected president, vice-president, and secretary and treasurer, respectively. The Army Air Corps contract in the process of preparation was Contract No. W 535-ac-27310, Serial No. 7689. A contract bearing that number dated March 13, 1942, between the War Department and Abbott Associates, Inc., was approved April 9, 1942. It provided for the purchase of 10,000 magneto synchronizers at a gross contract price of $194,400, and was terminable upon approval of the Secretary of War if the best interests of the government so required. Following organization of Abbott Associates, Inc., Abbott and Grace Hubbard each received salaries of $700 per month. Abbott Associates, Inc. had about 12 employees and engaged in the manufacture of the magneto indicators during the *126 Summer of 1942. In the latter part of July, or in August 1942, Abbott contacted Maurice Blanchard, a certified public accountant, regarding the possible dissolution of Abbott Associates, Inc. The purpose of this consultation was to determine the advisability, tax-wise, of a change from a corporate organization to a proprietorship. On August 18, 1942, Blanchard addressed a letter to Abbott Associates. Inc., setting forth the tax savings that would result if a partnership were organized. Abbott discussed the formation of a partnership with Hubbard and showed him a letter outlining the advantages of that form of organization. Hubbard did not agree to this proposal. Instead, he invited Abbott to make an offer for his mother's stock, and Abbott made an offer which was not acceptable to Hubbard. Abbott also discussed the dissolution of the corporation with a Boston attorney, John Carr, and also discussed with him the advisability of purchasing Grace Hubbard's stock. Carr consulted a tax expert, and thereafter advised Abbott that elimination of the corporate form of doing business would result in much saving and that it would be advantageous to purchase Grace Hubbard's stock. Abbott *127 and Hubbard had further negotiations regarding the purchase of the Class A stock owned by Grace Hubbard, and Hubbard suggested to Abbott that he pay $30,000 for it. Abbott indicated his willingness to do so provided he could raise the money. Abbott later asked Hubbard to accept a check of Abbott Associates, Inc., in payment for the stock, but Hubbard refused. Hubbard suggested that Abbott endeavor to obtain a loan at the Riverside Trust Company in Hartford, Connecticut. In anticipation of the sale, Hubbard had his mother and wife, Grace and Barbara Hubbard, endorse the certificates of Class A stock of Abbott Associates, Inc., which he then placed in the hands of the Hartford National Bank & Trust Company. A few days later, on September 28, 1942, Abbott called at Hubbard's office and told him that he had succeeded in raising the money and agreed to purchase the Class A stock for $30,000. Hubbard thereupon telephoned Russell Greer of the Hartford National Bank & Trust Company, and, in Abbott's presence dicated a letter confirming his instructions to forward the Class A stock to the Riverside Trust Company with a covering letter which he dictated at the same time. The pertinent portions *128 of the covering letter addressed to the Riverside Trust Company are as follows: "Attached you will find two hundred (200) shares of Class 'A' stock of Abbott Associates, Inc. Certificate No. 4 is for one (1) share in the name of Barbara A. Hubbard. Certificate No. 5 is for one hundred and ninety-nine (199) shares in the name of Grace D. Hubbard. "It is requested that you hold these two hundred (200) shares until payment of $30,000.00 has been received from Walter Abbott, and a check for $700.00 made out in the name of Grace D. Hubbard for her September salary is received from Abbott Associates." The Class A certificates and the covering letter written by Hubbard were delivered to the Riverside Trust Company by the Hartford National Bank & Trust Company on September 29, 1942. The legal work in connection with the incorporation of Abbott Associates, Inc. was handled by the Hartford law firm of Shipman & Goodwin, of which firm W. Arthur Countryman, Jr. is a member. On September 28, 1942, Abbott telephoned the offices of Shipman & Goodwin and spoke to Countryman regarding the dissolution of Abbott Associates, Inc. Later that day Abbott conferred with Countryman for one hour with *129 respect to the purchase of the stock of Grace Hubbard and dissolution of the corporation. Countryman telephoned Hubbard and inquired whether Grace Hubbard had sold her stock to Abbott, and Hubbard advised Countryman that she intended to sell it to Abbott provided he was successful in obtaining a loan at the Riverside Trust Company. Immediately following his discussion with Abbott, Countryman prepared a "Waiver of Notice of Special Meeting of the Stockholders of Abbott Associates, Incorporated" containing two signature lines. He also prepared an instrument entitled "Agreement of Stockholders of Abbott Associates, Incorporated, Terminating the Corporate Existence of Said Corporation." On September 29, 1942, Abbott endorsed in blank a check of Abbott Associates, Inc., bearing the same date, payable to himself in the amount of $30,700, and presented it to the Riverside Trust Company. The Riverside Trust Company delivered certificates for 200 shares of Class A stock of Abbott Associates, Inc., to Abbott in exchange for the check and receipt signed by him. On October 2, 1942, the Riverside Trust Company addressed a letter to Hubbard reading in part as follows: "Pursuant to instructions *130 contained in your letter of September 28, we have delivered certificates for 200 shares Class A stock of Abbott Associates, Inc., duly endorsed for transfer to Walter D. Abbott. We have received from him, in payment thereof, the sum of $30,700.00, check for said amount payable to Grace D. Hubbard, being enclosed." The check enclosed was a treasurer's check of the Riverside Trust Company. On September 29, 1942, Grace Hubbard sold her 199 shares of A stock and Barbara Hubbard her one share to Abbott, who purchased and acquired possession of the two certificates covering the 200 A shares previously owned by Grace Hubbard and Barbara Hubbard, and Abbott was then the legal or beneficial owner of the entire outstanding capital stock of Abbott Associates, Inc. On September 29, 1942, Walter and Capen Abbott appeared at the offices of Shipman & Goodwin and signed the "Waiver" and "Agreement" referred to above. Except for the insertion of the hour, the waiver which they signed contained only two signature lines and read as follows: "We, the undersigned, being all the stockholders of the above-named corporation, do hereby waive all notice, whether statutory or otherwise, of the time, *131 place and purpose of a special meeting of the stockholders of said corporation and agree that the same may be held on the 29th day of September, A.D., 1942 at: o'clock… M. at the office of Shipman & Goodwin, Room 501, 15 Lewis Street, Hartford, Connecticut, and do consent to the transaction of such business as may come before said meeting or any adjournment thereof, including the acquisition by purchase of the whole of the Class A stock of said corporation and the voluntary dissolution of said corporation." The agreement read as follows: "We, the undersigned, being all the stockholders of said corporation, hereby agree that the corporate existence of said corporation shall be terminated as of September 30, 1942, and the directors are authorized to take the necessary action to carry out this vote. "Dated at Hartford, Connecticut, this 29th day of September, 1942." Thereafter, the following minutes of "Meeting of Stockholders of Abbott Associates, Incorporated" were prepared by Countryman and signed by Capen Abbott: "A meeting of the stockholders of Abbott Associates, Incorporated was held at the office of Shipman & Goodwin, Room 501, 15 Lewis Street, Hartford, Connecticut *132 on the 29th day of September, 1942 at 2 o'clock P.M. "The following, being all the stockholders of the above named corporation, were present: Mr. Walter D. Abbott, and Mr. Capen Abbott. "The President of the corporation called the meeting to order. "Upon motion duly made and seconded, it was voted that the corporation acquire by purchase all of the Class A stock of the corporation amounting to two hundred (200) shares for the price of thirty thousand seven hundred (30,700) dollars. "Upon motion duly made and seconded, it was voted that the directors are hereby authorized to acquire said stock. "Upon motion duly made and seconded, it was voted that the president and treasurer of the corporation shall prepare and file the necessary papers to make this vote effective. "Upon motion duly made and seconded, it was voted that that portion of the vote of the Board of Directors passed at its meeting held on April 18, 1942 providing a salary of seven hundred (700) dollars per month to the vice president of the corporation is hereby rescinded and such salary terminated as of August 31, 1942. "Upon motion duly made and seconded, it was ordered that a copy, or the original of the *133 Agreement of Stockholders of Abbott Associates, Incorporated be inserted in the minute book for the purpose of reference. "There being no further business, the meeting thereupon adjourned." The "Agreement of Stockholders" referred to in the minutes of the meeting held September 29, 1942 was the agreement terminating the existence of the corporation. The minute book of Abbott Associates, Inc. contained no other document or minutes than those set forth above relating in any way to action taken by the corporation on September 29, 1942 and September 30, 1942. Neither Grace nor Barbara Hubbard received any notice of a stockholders' meeting of Abbott Associates, Inc., to be held September 29, 1942. From and after October 1, 1942, Abbott purported to conduct a business as sole proprietor under the name of Abbott Associates at the same address and with the same employees. He advised creditors that the business formerly conducted by the corporation would be carried on by him as sole proprietor. A commercial account in the name of Abbott Associates, Inc., at the Riverside Trust Company was continued, and a new account in the name of Abbott Associates was opened at the same bank. *134 The War Department was notified of the agreement to dissolve Abbott Associates, Inc. In a letter dated October 8, 1942, the War Department advised that a certified copy of approval of extinguishment of the corporation as a separate legal entity, signed by the Secretary of State, was required, and it would then determine how to make effective the liability of the new principal. In response to additional inquiries by the War Department, Shipman & Goodwin wrote officials at Wright Field on October 23, 1942, that no bill of sale of the assets of Abbott Associates, Inc. could be delivered until after the expiration of the four-month period in which creditors have a right to present claims. Checks issued by the War Department in payment of shipments made under Contract No. W 535-ac-27310, up to and including April 1943, were made payable to Abbott Associates, Inc., and were deposited in the bank account of Abbott Associates, Inc. On October 30, 1942, Abbott, individually, doing business as Abbott Associates, entered into a contract with the Navy Department for 1,000 magneto synchronizers, and on November 30, 1942 entered into a contract for an additional 40 synchronizers with the Navy *135 Department. A few days prior to February 1, 1943, Abbott telephoned the offices of Shipman & Goodwin and advised Countryman that he wished to complete the steps for final dissolution of Abbott Associates, Inc., in order to file the necessary certificate with the Secretary of State and be in a position to notify the contracting officer at Wright Field that the corporation had been terminated, so that he (Abbott) might enter into a new contract as proprietor. On February 1, 1943, Countryman wrote a long letter to Abbott Associates, Inc., setting forth the steps necessary to effect final dissolution of the corporation. A "Final Certificate of Dissolution of Abbott Associates, Incorporated" was filed with the Secretary of State on February 16, 1943, which certificate read in part as follows: "We, the undersigned, a majority of the Directors of Abbott Associates, Incorporated, a corporation organized under the statute laws of the State of Connecticut and located in the Town of Hartford in said State, acting herein as trustees to close up the business of said corporation under the provisions of said statute laws, hereby certify: "That we have completed our duties as prescribed *136 by Section 3471 of the Revised Statutes of 1930, as amended, in winding up the affairs of said corporation and have sold or collected all of its assets and have distributed the same in the manner following: "To Walter D. Abott, proprietor, doing business as Abbott Associates." After filing of the final certificate of dissolution, and on various dates in March 1943, Abbott and his attorney had further correspondence with the contracting officer at Wright Field relative to the execution of "Supplemental Agreement No. 1 to Contract W 535-AC-27310." A draft of the proposed supplemental agreement, reciting the final dissolution of Abbott Associates, Inc., on February 16, 1943, and the transfer of its assets to Abbott, contained provisions for the assignment of rights in the original contract to Abbott, doing business as Abbott Associates, and the assumption by him of all obligations of Abbott Associates, Inc., under the contract. An amended contract was signed by Abbott individually in March 1943. War Department Contract No. W 535-ac-27310 was 43% completed on September 30, 1942. The contract price of total shipments during 1942 was $145,000, of which amount $82,222 was shipped prior *137 to September 30, 1942, and the balance during the last three months of the year. The cash balance in the bank account of Abbott Associates, Inc., on September 29, 1942 was $41,967.74. The balance sheet of Abbott Associates, Inc., as of September 30, 1942, was as follows: ASSETS
Cash
$ 8,443.97
Notes and accounts receivable
7,934.94
Inventories - Materials and parts
$15,794.51
Goods in process and finished
3,201.87
18,996.38
Capital assets: Depreciable assets - Mach. and equip.
4,276.47
Furniture and fixtures
325.69
Total depreciable assets
$ 4,602.16
Less: Reserve for depreciation
571.82
4,030.34
Other assets: Deferred charges
$ 321.30
Manufacturing rights
11,400.00
11,721.30
TOTAL ASSETS
$51,126.93
LIABILITIES
Accounts payable
$12,415.43
Accrued taxes
28,373.24
Other liabilities: Expenses of liquidation
250.00
Capital stock: Common stock
20,000.00
Earned surplus and undivided profits
(9,911.74)
TOTAL LIABILITIES
$51,126.93
The liabilities shown on the balance sheet were all to unsecured creditors. Between October 8, 1942 and October 24, 1942, the creditors were paid by checks of Abbott Associates, *138 Inc., which totaled $12,466.43. Deposits in the commercial account of Abbott Associates, Inc., in the Riverside Trust Company subsequent to September 30, 1942, and to and including May 4, 1943, totaled $98,299.59. Of this amount, $47,785.32 was deposited between September 30, 1942, and December 31, 1942. The remaining amounts were deposited on the following dates: January 12, 1943
$ 5,703.60
January 13, 1943
4,865.47
January 14, 1943
20.00
February 10, 1943
5,513.48
February 25, 1943
11,407.20
March 8, 1943
9,506.00
March 30, 1943
7,985.04
May 4, 1943
5,513.48 All of the deposits in the above account subsequent to September 30, 1942 were in respect of checks from the War Department on Contract No. W 535-ac-27310. Checks on the Abbott Associates, Inc., account payable to Abbott Associates were drawn as follows: Check
No.
Date
Amount
624
Sept. 29, 1942
$ 1,000.00
661
Oct. 10, 1942
1,000.00
664
Oct. 23, 1942
5,000.00
669
Nov. 9, 1942
15,000.00
670
Dec. 10, 1942
20,000.00
671
Jan. 28, 1943
10,000.00
672
Apr. 9, 1943
35,000.00
673
May 24, 1943
6,791.19
TOTAL
$93,791.19
All of the checks payable to Abbott *139 Associates were deposited in the commercial account in the name of Abbott Associates. The Abbott Associates, Inc., account was closed on May 25, 1943, by a transfer of the balance of $6,791.19 to the Abbott Associates account. Abbott Associates, Inc., filed a federal income tax return for the period March 15, 1942 to September 30, 1942 in December 1942, disclosing a tax liability of $1,117.67. Net sales were reported as $99,871.85 and net income as $33,191.32. The deductions claimed included $8,600 for amortization of $20,000 paid by the corporation for manufacturing rights under the War Department contract. In his individual income tax return for the calendar year 1942, Abbott reported net profit from business for the period October 1, 1942 to December 31, 1942, inclusive, as $49,778.20. This amount was later reduced $22,000 by renegotiation of the profits. Proceedings for the renegotiation of profits on the War and Navy Department contracts for magneto synchronizers supplied by Abbott Associates, Inc., and Abbott Associates were commenced in February 1943. A renegotiation agreement was effected in the latter part of 1943 by which it was determined that profits realized during *140 the calendar year 1942 were excessive to the extent of $51,000, of which amount $29,000 was attributed to business transacted prior to September 30, 1942. On December 13, 1943, payment was made by a check of Abbott Associates of excessprofits tax of Abbott Associates, Inc., for the period March 15, 1942 to September 30, 1942 in the amount of $25,549.16. The latter amount was used as a credit against the $29,000 due the government under the renegotiation agreement, and the balance was paid by check of Abbott Associates. The deficiency in excess-profits tax determined to be due from Abbott Associates, Inc., is principally based on the disallowance of the deduction for amortization of the War Department Contract. In September 1942, Abbott was advised that the item in question was "not subject to amortization under the Revenue Code." In the course of the dissolution and liquidation of Abbott Associates, Inc., Abbott received for his own use and benefit property having a value in excess of the liability asserted in this proceeding. Opinion The question presented is whether either or both of the petitioners are liable as transferees. The respondent concedes hat he has no claim *141 against petitioner Grace D. Hubbard if, as she contends, she sold her 200 A shares of the capital stock of Abbott Associates, Inc., to Abbott personally for a consideration [*] 30,000. There is a sharp disagreement between the petitioners as to the details relating to the transaction as to the acquisition of the 200 A shares. In our findings appear the facts bearing on the preliminary negotiations and manner in which the transfer of the said shares was consummated. It seems unnecessary to repeat them here. We think the credible testimony which is supported by documentary evidence clearly establishes the fact that there was a sale of the 200 A shares by petitioner Hubbard to Abbott, and have so found. Only on the theory that Abbott had acquired equitable title to the A shares prior to the corporate meeting at which Abbott and his brother, Capen Abbott, who held one qualifying share, voted to purchase the 200 A shares and dissolve the corporation would the action taken comply with the corporate law of Connecticut and give validity to the proceeding. Petitioner Abbott concedes and the corporate records confirm the fact that Grace Hubbard and Barbara Hubbard were not notified of the *142 corporate meeting, and were neither present nor represented thereat. Since we have found as a fact that Abbott acquired the A shares by purchase, it follows that petitioner Hubbard received no assets of the corporation in partial liquidation so as to render her liable as a transferee. ; . We pass to a consideration of the question as to Abbott's liability as transferee. The respondent admits he has the burden of establishing transferee liability either at law or in equity. Abbott, on brief, concedes that he received all the assets of Abbott Associates, Inc., except the money used to pay trade creditors, and that he is responsible to the United States for the actual value of such assets. He contends, however, that the $30,000 of the corporate funds used to purchase the 200 A shares constituted a distribution to petitioner Grace Hubbard, and that the balance of the corporate assets which he received was insufficient to discharge all the liabilities of the corporation. We have held that the 200 A shares were purchased by Abbott personally. To make such purchase, *143 it is clear that Abbott used the funds of the corporation and, to that extent, became a debtor of the corporation. Upon his surrender of the 200 A shares, so acquired, his indebtedness to the corporation was cancelled. By this transaction Abbott received assets of the corporation either as a dividend in partial liquidation or as a step in the contemplated final liquidation and dissolution, rendering him liable as a transferee for the deficiency here involved. Assuming, arguendo, that the $30,000 was not distributed to Abbott, we think, upon this record, that the respondent has sustained his burden of showing that Abbott, as sole stockholder, received corporate property in the final dissolution and liquidation of Abbott Associates, Inc., of a value in excess of the deficiency involved herein. The balance sheet of Abbott Associates, Inc., as of September 30, 1942, discloses assets aggregating $51,126.93. The liabilities, exclusive of capital stock of $20,000, representing the then outstanding 200 shares of B stock, consist of accounts payable of $12,415.43, a reserve for taxes of $28,373.24, and expenses of liquidation in the amount of $250. Abbott concedes that he received all of *144 the assets shown on the balance sheet and which were of the value shown thereon, except he contends that the asset listed as "manufacturing rights" of the value of $11,400 became valueless by reason of the dissolution of the corporation. At the time of the incorporation of Abbott Associates, Inc., in March 1942, 200 shares of its B capital stock of the par value of $100 were issued to Abbott in consideration for his transfer of all his right, title and interest in the magneto synchronizer, including the right to apply for a patent, and his assignment to the corporation of all his interest in a contract in process of preparation with the Army Air Corps, including all moneys due or to become due by virtue of the contract. Abbott certified that the property and contract rights assigned by him to the corporation had a value of $20,000. These assets are shown on the balance sheet of September 30, 1942 as having a value of $11,400, or 57 per cent of the amount paid therefor. These assets were apparently written down for the reason that the contract with the Army Air Corps had been 43 per cent performed at the date of dissolution, since only 4,300 of the required 10,000 units required by *145 the contract had then been furnished. The difference between the $20,000 and the $11,400 shown on the balance sheet, or $8,600 was claimed on the income tax return filed by the corporation for the taxable year 1942, as amortization, although Abbott had been previously advised that it was not a proper deduction. The disallowance of such claim for amortization is the principal adjustment made by the respondent basing the deficiency determined against the corporation. Commencing with October 1, 1942, Abbott, under the name Abbott Associates, took over the assets and conducted the business as a sole proprietorship. For the period October 1, 1942 to December 31, 1942, inclusive, the net profits of that business were $49,778.20, which amount was later reduced $22,000 by renegotiation of the profits. Abbott claims that the manufacturing rights were of no value, but this is not supported by the record. Furthermore, it appears that upon the dissolution of the corporation, Abbott's idea or invention, i.e., the magneto synchronizer, was returned to him. In this connection his testimony is that his idea was the most valuable item he received in the liquidation and that it was "worth more than *146 $18,000." In view of this record, we think it is clear that the value of the assets of Abbott Associates, Inc., at the date of its dissolution was not less than the amount of $51,126.93, as shown on its balance sheet of September 30, 1942. After that date, Abbott paid $12,466.43 to trade creditors, $250 expenses of liquidation, and paid to the United States for excess-profits and renegotiation liability the sum of $29,000, or an aggregate amount of $41,716.43. Abbott, therefore, as sole stockholder, received on the final liquidation property of Abbott Associates, Inc., of the value of at least $9,410.50, exclusive of the $30,000 involved in respect to the acquisition of the 200 A shares of the capital stock of that corporation. On the basis of the entire record, we think the respondent has affirmatively established that in the course of dissolution and liquidation of Abbott Associates, Inc., Abbott received for his own use and benefit property of a value in excess of the liability asserted. Therefore, we conclude and hold that Abbott is liable for the full amount of the deficiency involved herein. In Docket No. 15576, decision will be entered for the respondent. In Docket No. 19534, *147 decision will be entered for the petitioner.